## WYOMING & N. W. RY. CO. v. SNAVELY.

(No. 828; Decided July 31st, 1915; 150 Pac. 760.)

RAILROADS—DAMAGES FOR KILLING LIVE STOCK—MEASURE OF DAMAGES—DOUBLE DAMAGES—CONSTRUCTION OF STATUTES—LEGISLATIVE CONSTRUCTION — NEGLIGENCE — FENCES AND CATTLE GUARDS — INSTRUCTIONS TO JURIES—REPEAL OF STATUTES.

1. An act of the Territorial Legislature (Comp. Laws 1876, p. 544), approved December 9th, 1875, among other things authorized a recovery of damages from railroad companies for injuring or killing live stock, irrespective of negligence, and double damages for failure to give the owner a pre-

scribed notice; but a compliance with the act as to notice and payment of two-thirds of the sworn value of stock killed or injured released the company from further liability. The clause creating liability irrespective of negligence was declared unconstitutional in Schenck v. U. P. Ry. Co., 5 Wyo. 430. The two-thirds value limitation was subsequently stricken by amendment. (Laws 1888, Ch. 48.) The remaining portions of the act were carried into the last compilation. (Comp. Stats. 1910, Secs. 4206, 4207, 4208.) Laws 1907, Ch. 84, Secs. 1, 2 (Comp. Stats. 1910, Secs. 2593, 2594), without repealing former legislation on the subject established a different rule by requiring railroad rights of way to be protected by suitable fences and cattle guards and fixing a liability to the full amount of damages resulting from a failure to do so. *Held,* that the act of 1907 governs the recovery of damages for stock injured or killed by railroads and double damages are not recoverable therefor.

Error to the District Court, Fremont County; Hon. Charles E. Winter, Judge.

Action by Frank Snavely to recover damages for the killing of live stock on the ground that the defendant had failed to maintain a proper fence and to give notice to the plaintiff of the killing of the live stock, as required by statute. The plaintiff below recovered judgment against the railroad company for double the value of the animals and the company brings error.

*John D. Clark,* for plaintiff in error.

The instruction given, that if defendant had failed to comply with Section 4206, Comp. Stats. 1910, its liability, if liable at all, would be for double the value of the stock killed, was erroneous. The section was Section 2 of an act approved December 9th, 1875, Section 1 of which was declared unconstitutional in Schenck v. U. P. R. R. Co., 5 Wyo. 430, which fixed a liability for the killing of live stock by railroads, irrespective of the question of negligence. The section thus condemned was universal in its terms, and other sections of the act being subsidiary to the main provision of universal liability were rendered inopera-

tive, as the decision destroyed the whole foundation of the act by destroying the universal liability, which was the very basis of the statute. The statute is further objectionable, in that it deprives the defendant of property without due process of law. The penalty of double damages is unimportant, but the power of the Legislature to impose a particular duty upon railroads in the matter of giving notice in a certain way is important. The instruction complained of is objectionable in that it read into the statute an exception, which it does not contain, namely, the liability incurred for failure to maintain fences, which was one of the facts pleaded by plaintiff below. In determining the intent of the Legislature, the entire statute must be considered. (United States v. Reese, 92 U. S. 221; Baldwin v. Franks, 120 U. S. 685; United States v. Harris, 106 U. S. 629.) Unless such an exception as the court below made is read into the statute, we believe that it will be agreed that, in view of the decision in the Schenck case, the statute is unconstitutional. The imposition of a duty upon railroad companies alone to give notice to the owners of stock killed by their trains violates the federal constitution guaranteeing to each person the equal protection of the laws. Special legislation is not permissible. The statute singles out railroads from other tort feasors and imposes a special duty upon them. (Gulf C. & S. F. R. Co. v. Ellis, 165 U. S. 150; State v. Loomis, 115 Mo. 307.) A mere statute to compel the payment of indebtedness does not come within the scope of police regulations. Statutes authorizing the recovery of double damages are in some instances sustained. (Kansas City Railroad v. ————, 233 U. S. 375; Jensen v. Railroad, 25 So. 506, 127 N. W. 650, 24 Ann. Cas. 700; Chicago M. & St. P. R. R. Co. v. Polt, 26 S. D. 378, 128 N. W. 472; Chicago M. & St. P. R. R. Co. v. Kennedy, 28 S. D. 94, 132 N. W. 802.) But these decisions were reversed and the statute held to be unconstitutional. In 322 U. S. 165 and 232 U. S. 626 the original liability of the defendant is based upon the act of 1907 (Secs. 2593, 2594 C. S.) requiring railroads to fence their rights of way and renders them liable for the loss of

stock killed when the fence is defective or does not exist at all. In the absence of statute there was no liability at common law in the absence of real negligence. (Martin v. C. B. & Q. Railway Co., 15 Wyo. 493.) The liability being statutory, the amount of recovery must be limited to that fixed by statute, which, under Section 2594, is the full amount of damage sustained by the owner. (Harrington v. Gliden, 179 Mass. 486, 94 A. S. R. 613; Lynch v. M. Natl. Bank, 22 W. Va. 554; Chocktaw Railroad v. Bosburg, 71 Ark. 232, 72 S. W. 574; N. Y. R. Co. v. Zumbaugh, 12 Ind. App. 372, 39 N. E. 1058.) The court erred in refusing defendant's requested instruction as to actual notice. The theory of notice, as required by the act of 1875, was to enable the owner of live stock to furnish evidence of value. Since the amendment of the statute left Section 4207 useless and meaningless, the requirement of notice to the owner would seem to be a needless ceremony. Section 4206 is so closely connected with Section 1 of the act of 1875 that the unconstitutionality of the latter section renders Section 4206 likewise void. The section also deprives defendant of its property without due process of law and in depriving defendant of the equal protection of the law. Even assuming that Section 4206 is valid, the penalty there imposed cannot be assessed in the present case because the extent of the liability of defendant is fixed by Section 2594. Defendant cannot be assessed with a penalty for failure to give notice to the owner. because the latter acquired full knowledge within the time allowed by statute.

*M. C. Burk*, for defendant in error.

Two propositions are presented: (1) Section 4206, Comp. Stats. 1910, is valid; the act of 1875 was amended in 1888 so that the second section (4206, Comp. Stats. 1910) read the same as at present; the third section being changed from a settlement of two-thirds value, leaving it the same as now, except the reference to the first section, which was declared unconstitutional in Schenck v. Railroad Co., *supra*. The sections of the original act of 1875 were not interde-

pendent, but referred to a separate and distinct phase of the same subject and each was complete in itself. The federal cases cited by plaintiff in error are not in point; penalties provided for failure to perform a specified act are commonly upheld. (Little Rock & R. R. Co. v. Payne, 33 Ark. 816; Memphis & L. R. R. Co. v. Horsefall, 36 Ark. 651; Seaboard Air Line v. Seagar, 207 U. S. 73, and cases cited.) Liability being established under Section 2594, Comp. Stats. 1910, the double liability feature described by Section 4206 as a penalty for failure to give notice is reasonably within the police power of the state. A statute applying to all persons of a class violates no guaranty of equal protection of the law. (G. C. & St. F. R. R. Co. v. Ellis, 165 U. S. 150.) The contention that the classification is one of tort feasors, if true, will not be fatal under the decision of the United States Supreme Court, 52 S. E. 797, and afterwards reported in Seaboard Air Line v. Seager, *supra,* where it was affirmed on appeal. The classification was there based upon facts after the act causing loss had occurred. (See also Johnson v. C. M. & St. P. R. R. Co., 13 N. W. 673; Schimmel v. C. M. & St. P. R. R. Co., 25 N. W. 387.) (2) Section 4206, Comp. Stats. 1910, is applicable to this case. It was not affected by the decision in Schenck v. Railroad Co., *supra.* The company being liable in the first instance, the double liability is in the nature of a penalty for failure to comply with the statute. Section 2596 does not limit the amount of recovery, but covers all damages occasioned by failure to fence; that liability being established, why should not Section 2406 apply, when its provisions were not complied with? In Memphis & L. R. R. Co. v. Coulley, 33 Ark. 46, double damages were allowed, notwithstanding actual notice, where no notice was given under the statute. The rule was approved in St. Louis & Iron Mountain Railroad v. Wright, 57 Ark. 327, and in St. Louis & Santa Fe R. R. Co. v. Kimmons, 61 Ark. 200, 32 S. W. 405. The fact of actual knowledge of the injury is immaterial, as well from logical and moral, as legal considerations. Cases where knowledge is gained are the only ones where it could be

applied, since violation would prevent recovery except in those cases.

BEARD, JUSTICE.

This case involves the right of a party to recover double damages for live stock killed by a train on a railroad on account of the failure of the railroad company to give notice of the killing of the animals. Two head of Snavely's cattle were killed by a train on the railroad at a place where it was required to fence and had fenced its track, but had permitted the fence to become out of repair so that the cattle went upon the track and were struck by a train. No notice of such killing was given, filed or posted by the company. The plaintiff below, Snavely, recovered judgment against the railroad company in the district court for double the value of the animals, and the company brings error. The errors assigned are the giving of an instruction to the jury and the refusal to give an instruction requested by the company. The instruction which was given is as follows:

"The court instructs the jury that it is the law of the State of Wyoming that it is the duty of any railway corporation operating any railroad within the State of Wyoming when any live stock is killed by such corporation by running its engine or cars over or against any such live stock, within ten days thereafter to notify the owner or owners of such live stock so killed or injured of that fact, and if the owner is not known such corporation shall file in the office of the county clerk of the county in which such live stock is so killed or injured a full description of such stock, including the number, class and brands of such live stock, naming the locality where such stock was so killed or injured, and immediately to post a notice in a conspicuous place on the station house or section house which is nearest to the place of the killing or injury, specifying the date and place of the killing or injury, the kind and number of animals, the color and brands or marks of such animals, and a copy of such notice shall be mailed to the owner if known. That any corporation failing to comply with the law above

stated shall be liable to the owner or owners of such stock in double the amount of the value of such stock. You are further instructed that if you find from the evidence in this case that defendant Wyoming and Northwestern Railway Company has failed to comply with the law as thus stated and you shall further find under the following instructions that the defendant is liable for the injury to said cattle, you will assess the damages of plaintiff, if you should find any, at double the value of the stock so killed."

The requested instruction which the court refused to give is as, follows: "If you find that the plaintiff, within two or three days after the injury to his cattle, acquired knowledge thereof from any source, you shall not award double damages to him even though you shall find that the defendant did not give notice to him as required by the statute."

Prior to the act of February 18, 1907, railroad companies were not required to fence their tracks, but by an act of the Territorial Legislature, approved December 9, 1875, entitled, "An act to provide for payment for live stock killed by railroads or railway companies," it was provided as follows:

"That any corporation operating a railway, or railroad, within this territory, which shall injure or kill any live stock, by running any engine or engines, car or cars, over or against any such live stock, shall be liable to the owner or owners of such live stock, for the damage sustained by such owner or owners, by reason of such injuring or killing of such live stock." (Comp. Laws 1876, p. 544, Sec. 1.)

"That any said corporation injuring or killing any live stock, by running any engine or engines, car or cars, over or against any such live stock, shall, within ten days thereafter, notify the owner or owners of such live stock so killed or injured, of the fact; Provided, That if the ownership of such stock so killed or injured, is unknown, such corporation shall file in the office of the recorder of the county in which such live stock was so killed or injured, a full description, including the number, classes and brands, of such live stock, naming the locality where such stock was so killed or injured. And any corporation failing to comply

with the requirements of this section shall be liable to the owner or owners of such live stock, so killed or injured, in double the amount of the damages sustained by the owner or owners of such stock, by reason of the said killing or injuring." (Id., Sec. 2.)

"Any person or persons owning any live stock which shall be killed or injured, in the manner set forth in the first section of this act, within six months after the said person or persons is, or are, notified of the said killing or injuring, as provided in the second section of this act, shall furnish the corporation having so killed or injured live stock, through its nearest agent, sworn evidence of the value of said live stock, and upon the payment by said corporation, to the owner or owners of said live stock, of two-thirds of the value of said stock, so ascertained, the said corporation shall be released from all liability under this act." (Id., Sec. 3.)

By an act approved March 7, 1888, Section 2, above quoted, was amended by inserting in the proviso, after the notice there required, "and such corporation shall also cause a notice of the injury or killing of any such live stock to be immediately posted up in a conspicuous place on the station house or section house which is nearest to the place of killing, which notice shall specify the date and place of such injury or killing, the kind and number of animals injured or killed, the color and brands or marks of such animals and the owner's name, if known. The carcases of any animals so killed shall not be buried until three days after the posting of such notice. A copy of the notice so posted shall, in all cases, be immediately mailed by the section foreman to the owner of such animal, if such owner be known to him, and this notice shall be in addition to that named in the first part of this section." Also amending Section 3 by striking out the provision for the release of the corporation from all liability under this chapter on payment of two-thirds of the value of said stock. Since that time that statute has not been amended, repealed or referred to by the Legislature, but was carried into the Compiled Statutes 1910, Sections 4206-7.

ln 1895 the question of the constitutionality of that statute came before the Supreme Court in the case of Schenck v. U. P. Ry. Co., and Clark et al., Receivers, 5 Wyo. 430, 40 Pac. 840. In that case a cow was killed by a train, and the District Court under the statute then in force certified two questions to the Supreme Court for its decision: "First: Are the defendants, or either of them, liable for the killing of said cow without reference to the question of negligence? Second: Is the statute of Wyoming in relation to the killing of live stock by engines and cars constitutional to the extent that it renders the railway company operating such engines and cars liable for stock killed by the same in the absence of negligence?" .The court said: "To the first question we answer no, and to the second, such statutes are unconstitutional to the extent specified." Citing authorities. That decision left the liability of railroad companies for damages for stock injured or killed by its engines or cars in the same situation they were in in the absence of any statute on the subject. And if the Legislature could not constitutionally impose upon the company the burden of paying for all stock so injured or killed in the absence of negligence on its part, it is difficult to understand how it could constitutionally impose in all cases and in exactly the same circumstances the burden of giving notice of such injury or killing. This view of the scope of the decision in the Schenck case is strengthened by the subsequent legislation on the subject, and appears to have been the view taken by the Legislature in 1907, when it passed an act entitled, "An act requiring railway corporations to construct, maintain and keep in repair fences and cattle guards and making all railway companies liable for the loss sustained by reason of the injury or killing of live stock on their tracks when the prescribed fences or cattle guards are not built or maintained." The act provides as follows:

"All railway corporations, owning or operating a line of railway within the state, shall construct, maintain and keep in repair on each side of the track thereof, a sufficient fence, so connected with suitable cattle guards at all public road

crossings as to prevent stock from getting on the railroad track of said corporation, and such fence when of barb wire to consist of four wires securely fastened to posts set not more than thirty-two feet apart, with stays not more than ten feet apart. Such fence shall be constructed within nine months after the completion of any railroad track or any part thereof, and in the case of railroads now constructed and in operation, within three months after the approval of this act. Provided, That railway corporations shall not be required to construct and maintain a fence within the boundaries of any incorporated city or town." (S. L. 1907, Ch. 84, Sec. 1; Wyo. Comp. Stat. 1910, Sec. 2593.)

"Any corporation operating a railway and failing to fence the same and to construct and maintain suitable cattle guards as required by Section 1 hereof, shall be liable to the owner or owners of any live stock killed or injured by reason of its failure to construct or keep in repair such fence or cattle guard in the manner provided in this act, for the full amount of the damage sustained by the owner on account thereof and to make a *prima facie* case for recovery, it shall only be necessary for such owner to prove the loss or injury to his property; Provided, That no corporation operating a railroad shall be liable for any damage occasioned by the wilful act of the owner or of his agent or employees or for stock killed or injured on public road crossings unless negligence on the part of such corporation, its agents, servants or employees can be shown." (S. L. 1907, Ch. 84, Sec. 2; Comp. Stat. 1910, Sec. 2594.)

That railroad companies may be required to fence their tracks and to keep the fences and cattle guards in repair, and for a failure to do so penalties by way of increased damages or otherwise may be imposed is settled beyond controversy; and by the statute last quoted if the company neglects to so protect its tracks it is made liable to the full amount of damages sustained by the owner on account of stock injured or killed on its tracks regardless of the care exercised in the operation of its trains. The statute also changes the rule of evidence and makes proof of the loss or

injury *prima facie* evidence of negligence on the part of the railroad company entitling the owner to recover in the absence of proof that proper fences and cattle guards have been constructed and reasonable care taken to keep them in repair, except as provided in the last section quoted. The enactment of 1907 embraces the subject matter of the former act, namely, the liability of railroad companies for damages from killing or injuring live stock by its engines and cars; and while the former statute was not referred to or expressly amended or repealed by the act of 1907, it is our opinion that the Legislature regarded the former act as annulled by the decision in the Schenck case, and intended the act of 1907 to be the rule for recovery of damages for stock injured or killed on railroads, at least where they are required to construct and maintain fences and cattle guards, and in the other cases mentioned in that act. If we are right in that conclusion the District Court was in error in instructing the jury that if it found the defendant liable it should award double damages. As we hold that double damages are not recoverable under our present statute, the question presented by the instruction requested by the defendant and refused by the court need not be and has not been considered. For the reasons stated the judgment of the District Court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed.*

POTTER, C. J., and SCOTT, J., concur.